UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

INLIGHTEN, INC.,

                           Plaintiff,

      vs.

ADG, LLC D/B/A GREAT EXPRESSIONS
DENTAL CENTERS,

                          Defendant.

**PLAINTIFF'S COMPLAINT
AND DEMAND FOR JURY
TRIAL**
Civil Action No.: _____

        Plaintiff, inLighten, Inc. ("inLighten"), by its attorneys, Nixon Peabody LLP, as and for

its Complaint against defendant, ADG, LLC d/b/a Great Expressions Dental Centers ("Great

Expressions") alleges as follows:

## THE PARTIES

        1.      Plaintiff inLighten is a corporation organized and existing under the laws of the

State of New York with its principal place of business at 9645 Wehrle Drive, Clarence, New

York 14031.

        2.      At all relevant times, inLighten was and is in the business of designing and

selling proprietary digital media services and products.

        3.      Upon information and belief, Defendant Great Expressions is a limited liability

company organized and existing under the laws of the State of Michigan with a principal place of

business at 300 East Long Lake Rd., Suite 311, Bloomfield Hills, Michigan 48304.

        4.      Upon information and belief, at all relevant times, Great Expressions was and is

in the business of owning and operating locations that provide dental services throughout the

United States.

## JURISDICTION AND VENUE

5.      This action is commenced pursuant to 28 U.S.C. § 1332.

6.      Venue is proper in the Western District of New York under 28 U.S.C. §

1391(b)(2).

## FACTUAL ALLEGATIONS

7.      inLighten designs and offers video systems that utilize proprietary software and

methods and strategies to provide customers with the tools to create a stream of customized

video content and images to their audiences.

8.      While a number of vendors offer video systems that provide on-site standard

video content, inLighten's proprietary software and design services are unique and make it a

leader in the "narrowcasting" industry.

9.      inLighten's proprietary software and strategies are designed to attract and engage

viewers, using a specific formula and template that allows the customer to select from a library

of video feed selections designed by inLighten of announcements, advertisements, information,

weather, news, sports and entertainment, that incorporate a prescribed duration, frequency,

variation and sequence of screens and content.

10.     For example, many vendors provide video streams of standardized content, with

continual looping or repetition of the same information in the same format, leading to viewer

boredom and disengagement.  In contrast, inLighten's proprietary system gives the customer the

ability to select substantive video content, which is presented in a format designed by inLighten

that varies the format of presentation to limit repetition (and viewer boredom) and engage the

viewer.

11.     inLighten's proprietary tools allow each customer to customize content to address

the demographics of its audience, integrating promotional material about the host's products and

services into the inLighten-designed video feed at specified intervals to maximize the impact on and engagement of the viewer.

12.     inLighten creates a library of video content from multiple sources for customers' systems at its headquarters in Clarence, New York, designs the varying templates that present that content with limited repetition, hosts the content, and "streams" or sends the inLighten-designed feed of video selected by the customer from New York to monitors at its customers' locations.

13.     Customers select inLighten as their vendor to obtain access to its unique and proprietary software, services and strategies, which provide a superior video system.

14.     In January 2012, Great Expressions reached out to inLighten at its offices in Clarence, New York and requested information about inLighten's digital media products and services.

15.     Thereafter, the parties conducted lengthy and detailed negotiations, primarily by email and telephone communications, regarding the design, creation, sale and installation of digital media systems by inLighten at multiple Great Expressions locations across the United States that would incorporate video content custom-selected and combined by inLighten using its proprietary software and Great Expressions promotional content, along with ongoing design, creative and technical services.

16.     Ultimately inLighten and Great Expressions entered into a "Vendor Agreement" made as of January 14, 2013 ("Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit A.

17.     Pursuant to the Agreement, inLighten agreed to provide its proprietary software and hardware systems, install them at Great Expressions offices, and provide ongoing graphic, news and entertainment digital content to 188 Great Expressions dental office locations

throughout the United States during an installation period, and then extending for a further term of three years, commencing upon the completion of the installations.

18.     The Agreement contemplates that inLighten would provide services from its Clarence, New York offices, including designing proprietary hardware systems, designing and creating a selection of data feeds utilizing its proprietary software, creating customized promotional content for Great Expressions, and providing ongoing creative services and technical support throughout the term of the Agreement.

19.     Great Expressions agreed to pay inLighten approximately $2.5 million during the initial term of the Agreement, including: (a) $1,789,950 for software, hardware, media and equipment manufactured, developed or acquired by inLighten and installation and related services to be provided by inLighten; (b) an annual service charge of $173,900 for each year of the term, including content design and management, network and content hosting, and technical support; and (c) an annual service charge of $8,000 for each year of the term for creative services for creation of promotional material.

20.     After the parties executed the Agreement, and with the full knowledge and encouragement of Great Expressions, inLighten began implementation of the Agreement by, *inter alia*, training Great Expressions personnel, creating graphics, developing promotional material, information sharing, and beginning to create the internal infrastructure required to perform its contractual obligations under the Agreement.

21.     The Agreement required Great Expressions to make an initial payment of $591,555 within ten (10) days of receipt of initial billing from inLighten (the "Initial Payment").

22.     On or about January 23, 2013, as the Agreement provided, inLighten sent its invoice to Great Expressions for the Initial Payment of $591,555.

23.     Upon receipt of the Initial Payment from Great Expressions, the Agreement required inLighten to provide services and prepare the hardware and software for shipment to Great Expression's locations.

24.     The Agreement required Great Expressions to pay the balance due for hardware, software and services in installments within 15 days after completion of installation at each of the individual Great Expressions locations, with any remaining amounts to be paid after completion of installation at Great Expression's locations.  *See* Exhibit A at ¶ 3.

25.     The Agreement required Great Expressions to pay the annual fee for design, network and content hosting, creative and technical services after the first year of the term in semi-annual installments.  See Exhibit A at ¶ 3.

26.     The Initial Payment was due within ten days of receipt of the invoice, or no later than February 2, 2013.  *See* Exhibit A at ¶ 3.

27.     Great Expressions acknowledged receipt of the invoice, made no objection but rather affirmed its obligation and intention to make the Initial Payment and represented to inLighten that the invoice was being processed for payment.

28.     On February 6, 2013, inLighten wrote to Great Expressions asking for the Initial Payment, and noting that further delay could impact pricing under the Agreement.

29.     inLighten also reaffirmed its readiness and willingness to proceed with its performance under the Agreement upon receipt of the Initial Payment.

30.     Thereafter, Great Expressions, unilaterally and without provocation or cause, expressed an intention to delay its performance of the Agreement to the third quarter of 2013 (i.e., July 2013).

31.     inLighten did not agree or acquiesce to any delay and again reaffirmed its readiness and willingness to proceed promptly with its performance and fulfill its own obligations under the Agreement upon receipt of the Initial Payment.

32.     The parties have not agreed to any modification or revision to the Agreement.

33.     Despite due demand and without provocation or justification, Great Expressions has refused to pay the amounts due under the Agreement, acknowledge or respond to communications from inLighten or otherwise proceed with the Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract)

34.     inLighten repeats and realleges each and every allegation contained in paragraphs 1 through 33 above as if fully set forth herein.

35.     The Agreement is a valid and binding contract between inLighten and Great Expressions.

36.     At all relevant times, inLighten has satisfied its duties and obligations under the Agreement.

37.     Great Expressions' failure to pay amounts due to inLighten, failure to respond or acknowledge communications from inLighten, and failure to proceed with the Agreement constitutes a repudiation and material breach of the Agreement.

38.     Great Expressions' unilateral refusal to proceed with the Agreement or honor the terms of the Agreement is without justification and constitutes "willful misconduct" under the Agreement.

39.     The Agreement provides for recovery of attorney's fees and costs by inLighten in addition to any other remedy or relief.

40.     Great Expressions' breach of the Agreement has caused inLighten damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

41.     Plaintiff demands a trial by jury of all issues so triable.

**WHEREFORE**, plaintiff inLighten respectfully requests that judgment be entered in its favor and against Great Expressions, as follows:

(a)     Awarding it full compensatory and consequential damages in an amount to be determined at trial, but in no event less than $2,500,000;

(b)     Awarding interest on all such sums awarded;

(c)     Awarding inLighten its reasonable attorneys' fees;

(d)     Awarding inLighten costs and disbursements, and interest;

(e)     Awarding inLighten such other and further relief as this Court deems just and proper.

Dated: March 5, 2014                     **NIXON PEABODY LLP**

By: */s/ Carolyn G. Nussbaum*
    Carolyn G. Nussbaum

1300 Clinton Square
Rochester, New York 14604
Tel: (585) 263-1000
cnussbaum@nixonpeabody.com

*Attorneys for Plaintiff*